## TUSCANY v LIEB

Ohio Appeals, 9th Dist, Lorain Co

No 616.   Decided Nov 11, 1932

C. M. Vrooman, Cleveland, and H. C. Cheney, Elyria, for plaintiff in error.

R. H. Rice, Elyria, for defendant in error.

FUNK, J.

Counsel for plaintiff claim four principal grounds of error: first, the refusal of the court to give certain special requests before argument, and error in the general charge on the subject of speed; second, error in the admission and rejection of evidence; third, that the verdict is manifestly against the weight of the evidence; and fourth, misconduct on the part of certain jurors.

First, said counsel contend that the court erred in refusing to give plaintiff's special requests to charge numbers three and four, which read as follows:

"Plaintiff's Request No. 3.

"I instruct you that as a matter of law no motor vehicle or commercial car drawing a semi-trailer shall be operated in the business or closely built up portions of any municipality or in any other portions thereof, or outside of municipalities at a greater rate of speed than is reasonable and proper, having due regard for width, traffic, use and the general and usual rules of such road or highway, and that a greater rate of speed than 12 miles an hour for such motor vehicle and semi-trailer shall be prima facie evidence of a speed greater than is reasonable and proper for general safety and the protection of the roadway."

"Plaintiff's Request No. 4.

"I instruct you that if you find that Arthur Krueger, the defendant's driver, was at the time and place in question operating the semi-trailer equipment of the defendant at a speed in excess of 12 miles per hour, that you must then find the defendant prima facie guilty of negligence as to such rate of speed."

And that the court committed further error by instructing the jury in the general charge that the speed limits for motor vehicles, equipped as was defendant's truck, was—

"fifteen miles an hour in the business and closely built up portions of municipal corporations, twenty miles an hour in other portions thereof, or twenty-five miles an hour outside of municipal corporations."

A determination of this question depends upon the construction to be placed upon **subdivision 3 of §7249 GC,** the parts of which section material to the issue in this case are as follows:

"* * * A greater rate of speed than the following shall be prima facie evidence of a rate of speed greater than is reasonable and proper for general safety and the protection of the roadway:

"1 * * *

"2. For vehicles equipped with pneumatic tires designed for the transportation of property, whose maximum weight of vehicle and load is three tons and not more than six tons, * * * twenty-five miles an hour outside of municipal corporations. * * *

"3. For motor vehicles drawing more than one trailer or one semi-trailer, twelve miles an hour."

It is admitted that the motor vehicle of defendant was of the tractor truck type, equipped with pneumatic tires and that it had one semi-trailer attached, and came within the kind of equipment and carrying capacity described in **subdivision 2 of §7249 GC;** that the same was empty and was traveling outside of a municipality.

It is contended by counsel for plaintiff that said subdivision 3 means that motor vehicles drawing more than one trailer or drawing only one semi-trailer are limited to a speed of 12 miles an hour. In other words, it is claimed that the words "more than" should have been repeated after the word "or" or the word "one" omitted after the word "or" in said subdivision 3, in order to place equipment with one semi-trailer within the provisions of said subdivision 2 and permit such equipment to travel more than 12 miles an hour.

We cannot agree with this contention. We think that a proper grammatical construction of said subdivision 3 not only permits but requires all of the language of said subdivision 3 before the words "one trailer" to be implied following the dis-junctive "or," and that the words "more than" thus qualify the words "one semi-trailer" as well as the words "one trailer." We further believe that the average person, be he grammarian or not, would so read said subdivision 3, and that many would say that it comes within the rule that, when the language used is plain and unambiguous and conveys a clear and definite meaning, courts are not required or permitted to construe it.

However, assuming that there is such ambiguity in the wording of said subdivision 3 as to require construction, can it be construed as claimed by counsel for plaintiff?

It is generally presumed that the members of legislative bodies know the meaning of words and the rules of grammar, and that consequently the grammatical reading of a statute gives its correct meaning; but it is well settled that a statute need not be construed by a strict adherence to technical grammatical rules, and its true meaning, if clearly ascertained, will prevail though contrary to the apparent grammatical construction.

It is also well settled in Ohio that the intention of the legislature must be ascertained from the language used in the statute under consideration, and that the question is, not what the legislature intended to enact, but what is the meaning of that which it did enact. However, where the language of a statute is ambiguous and not clear, and may thus admit of more than one construction, courts will look to the purpose and intent of the legislature and give it the construction that will make its operation just and reasonable. If one construction leads to absurd and unreasonable results and another construction does not, the courts will adhere to the construction that avoids unreasonable and absurd results, and in doing so they must and will take into consideration the reasonable and intelligent purpose of the statute rather than a ridiculous and absurd one.

With these rules in mind, it should be noted that all of the other four subdivisions of said §7249 GC regulating the speed of certain kinds of commercial cars have some classification as to the kind of tires or the weight and carrying capacity of the vehicle, without any reference whatever to trailers, while subdivision 3 makes no classification at all, but applies to motor vehicles of any kind, at least within the classification mentioned in said other four subdivisions of said §7249 GC, if not to motor vehicles of any kind; also that another section in the same chapter fixes the maximum length of au-

tomobiles hooked together which may be operated upon the public highways.

It is an indisputable fact that the operator of a motor vehicle drawing any kind of a trailer does not have the same degree of control over his equipment as he does over such vehicles having no trailer attached thereto. It is just as indisputable that if such operator has more than one trailer of any kind, he has a less degree of control than he has over an equipment of only one trailer. It is also quite evident from the descriptions of trailers and semi-trailers appearing in the record that such operator has a greater degree of control over a semi-trailer equipment than over a trailer equipment, and that a semi-trailer is less likely to sway than a trailer.

It is thus clear that the object and purpose of this subdivision is to protect the public from the dangers of more than one trailer of any kind being hooked together to one motor vehicle, no doubt by reason of the tendency of trailers to sway or whip when going too fast and because of the greater difficulty in controlling them.

The very evident object and purpose of said subdivision 3, as appears from a consideration of said §7249 GC as a whole and in connection with other provisions of the same chapter and the above indisputable and evident facts, tends to strengthen rather than weaken our construction from a grammatical standpoint.

It would be unreasonable, ridiculous and absurd to say that the legislature intended to fix the rate of speed at which a motor vehicle with only one semi-trailer attached may travel, not only at less than such vehicle with only one trailer attached may travel, but at the same as that at which such vehicle with two or more trailers attached may travel; and it would also be unjust to every operator of a motor vehicle with only one semi-trailer attached.

We are therefore clearly of the opinion that the trial court was right in refusing to give plaintiff's special requests to charge Nos. 3 and 4, and that he did not err in charging as he did concerning the rate of speed at which defendant's agent was permitted to operate said equipment.

Second. We have carefully considered all the claimed errors in the admission and rejection of evidence, and find no reversible error in any of them.

Third. Was the verdict manifestly against the weight of the evidence?

We find a direct conflict in the testimony given by some witnesses for the respective parties, and credible evidence to corroborate each of them. We further find the record to be such that a reviewing court could not reverse a verdict for either party as being against the weight of the evidence.

Fourth, counsel claims certain irregularities or misconduct on the part of several jurors, to the effect that one of the jurors was elected a member of the Democratic county central committee during the course of the trial, and that another juror made a certain remark to a juror sitting beside him during the taking of testimony.

We have carefully considered these contentions, and have arrived at the conclusion that they are not reversible error.

As to the selection of a juror on a Democratic committee during the progress of the trial, the record discloses that counsel for plaintiff knew that defendant was the Democratic nominee for sheriff and learned from the voir dire examination of said juror that she was a Democrat and had opposed his nomination for sheriff. We think that the mere fact that said juror was elected a member of the Democratic county central committee, in the absence of any further showing, is not sufficient ground to reverse this verdict.

As to the remark made by one juror to his fellow-juror, the record clearly shows that counsel for plaintiff heard the alleged remark and that he neither called it to the attention of the court nor made any objection to it at the time. While it was highly improper for a juror to make the claimed remark to his co-juror, it was too late, if counsel knew it at the time the remark was made, to make objection after the verdict was returned.

Findind no reversible error, the judgment will have to be affirmed.

PARDEE, PJ, and WASHBURN, J, concur in judgment.